UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| GARY J. RICHARD, et al., | ) |
| Appellants, | ) Civil No. 12-127-ART |
| v. | ) |
| | ) **MEMORANDUM OPNIION** |
| PHAEDRA SPRADLIN, et al., | ) **AND ORDER** |
| as Trustee of Alma Energy, LLC, et al., | ) |
| Appellees. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The appellants were defendants in an adversary proceeding in bankruptcy court. They appeal two rulings by the Bankruptcy Court. First, the Bankruptcy Court imposed sanctions on the defendants in the aftermath of a failed mediation conference, finding that the defendants did not prepare for the conference or participate in good faith. Second, the Bankruptcy Court denied the defendants' untimely motion requesting leave to file the requisite materials for their cross appeal. This Memorandum Opinion and Order addresses the first issue. The Court finds that the Bankruptcy Court did not abuse its discretion, and thus affirms the sanctions order.

BACKGROUND

The appeal before the Court is the second of three stemming from a long and litigious adversary proceeding in the United States Bankruptcy Court for the Eastern District of Kentucky. A fuller account of those acrimonious proceedings is provided in the Court's opinion resolving the first appeal. *See Spradlin v. Pikeville Energy Group, LLC*, No. 12-cv-111-ART, 2012 WL 6706188, at \*1−4 (E.D. Ky. Dec. 26, 2012). Thankfully, the Court need

not revisit that entire "scrambled maze of facts and allegations" here. *Id.* at *1 (quoting Memorandum Opinion, *Alma Energy, LLC v. Halle*, No. 7:09-ap-7005-jl (Bankr. E.D. Ky. May 4, 2009), [hereinafter "*Adversary Proceeding*"], R. 610 at 4).

The parties are former business partners of a now defunct coal company, Alma Energy, LLC. Alma was formed in 2005 and soon established mining operations in three Kentucky coal mines. *See Adversary Proceeding*, R. 1 at 8 ¶ 19.[1] Early in 2006, Alma began looking for investors to provide capital to help expand their operations. *Id.* ¶ 20. The plaintiffs, a group of investors led by Warren Halle, provided that capital. They struck a deal in which Alma transferred all its mineral-lease rights to the plaintiffs in exchange for: cash, the exclusive right to mine and sell coal from the existing three mines, and similar rights to any other mines acquired by the plaintiffs over the next twenty years. *Id.* at 8–9 ¶ 20, 10 ¶ 23. Alma struggled to turn a profit and soon filed for bankruptcy under Chapter 11. *Id.* at 11 ¶ 28. As part of its effort to dig itself out of debt, Alma looked for a partner who could take over the operations at the three mines. *See id.* at 24 ¶¶ 63−64. Alma came across the defendants, a mining company and a coal distributor, during that search. The defendants agreed to mine and sell the coal from Alma's mines (since Alma could no longer afford to finance those operations) and split the profits. *Id.* at 24−25 ¶¶ 63−65. Like Alma's agreement with the plaintiffs, the deal with the defendants also failed to turn a profit. *Id.* at 31−34 ¶¶ 91−99. The plaintiffs blame that failure on the defendants. *See Adversary*

---

[1] For brevity's sake, the Court will use a modified citation system to refer to records from the adversary proceeding in the Bankruptcy Court and the appeal in this Court. Records from the adversary proceeding, *Alma Energy, LLC v. Halle*, No. 7:09-ap-7005-jl (Bankr. E.D. Ky. May 4, 2009), will be cited as "*Adversary Proceeding*, R. __." Records from this appeal, *Richard v. Spradlin*, No. 7:12-cv-127-ART (E.D. Ky. Oct. 31, 2012), will be cited as "*Appeal*, R. __."

2

*Proceeding*, R. 416.[2]  In fact, the plaintiffs claim that the defendants bilked them out of millions by withholding profits from the defendants' sales of Alma's coal.  *See id.* at 22, 24 ¶¶ 119–24, 132–36.  The Bankruptcy Court attempted to resolve the case amicably by having the parties engage in mediation, but the six-month process proved fruitless.  *See Appeal*, R. 1-3 at 2–6.  The Bankruptcy Court eventually dismissed the complaint for lack of subject-matter jurisdiction because various amendments to the complaint during the course of the proceeding had divested the Bankruptcy Court of jurisdiction.  *See Adversary Proceeding*, R. 642; *Adversary Proceeding*, R. 643.

This appeal focuses on the Bankruptcy Court's order sanctioning the defendants for their behavior during the mediation conference.  *See Appeal*, R. 1 at 1.  Because the Bankruptcy Court's order was not an abuse of its discretion, the Court must affirm its order.

## DISCUSSION

### I. Defects in the Defendants' Appeal Brief

The defendants failed to comply with Rule 8010 of the Rules of Bankruptcy because their brief on appeal does not have a table of contents, a statement of jurisdiction, a statement of the issues, or a statement of the case.  *See Appeal* R. 12; Fed. R. Bankr. P. 8010(a)(1)(A)−(D).  The plaintiffs ask this Court to deal with that violation of Rule 8010 by dismissing the defendants' appeal or sanctioning the defendants.  *See Appeal*, R. 19 at 5, 7.  The Court will do neither.  Instead, the Court will grant the defendants' motion for leave to amend their brief, which corrects their original brief's defects.  *See Appeal*, R. 22.

---

[2] The plaintiffs were originally defendants when Alma filed the adversary proceeding, and only became plaintiffs after they settled with Alma and took over the adversary proceeding as part of the settlement. *See Spradlin*, 2012 WL 6706188, at *2–3.  For simplicity's sake, the Court leaves the details of that reversal of position to its previous opinion.  *See id.*

3

Rule 8010's substantive purpose is to give the district court and opposing parties notice of the aspects of a bankruptcy court decision that the appeal targets. *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 132 (3d Cir. 1998). District courts have discretion when dealing with violations of Rule 8010. *See id.* The plaintiffs do not explain why the Court should exercise its discretion and sanction the defendants in this case. They do not identify any issue that was raised in the defendants' brief but obscured by the brief's failure to follow Rule 8010. Nor do the plaintiffs demonstrate that they were prejudiced in any way. *See Appeal*, R. 19 at 1–4; *see also Ditto v. McCurdy*, 510 F.3d 1070, 1078 n.9 (9th Cir. 2007) (addressing an issue, despite the fact the bankruptcy appellant had not listed the issue in the "Statement of the Issues Presented," where the parties argued the issue in their briefs, the prior court's decision addressed it, and there was "no surprise or prejudice"). Also, the defendants have now tendered a corrected brief that conforms to Rule 8010. *See Appeal*, R. 22-3. A side-by-side comparison of the corrected brief to the plaintiffs' response brief makes it clear that the plaintiffs were able to identify all the issues raised by the defendants' appeal.

Given that the defendants' original brief did not create any problem that Rule 8010 was designed to avoid and the plaintiffs suffered no prejudice from the brief's defects, there is no reason to sanction the defendants here. This Court will therefore exercise its discretion under the rule and grant the defendants leave to amend.

## II. The Bankruptcy Court's Order Granting Sanctions

The Bankruptcy Court tried to resolve the adversary proceeding by ordering the parties into mediation proceedings. After the mediation broke down, the plaintiffs moved for

4

sanctions against the defendants. The Bankruptcy Court granted the motion, finding that the defendants (1) did not prepare for the mediation conference and (2) failed to participate at the conference in good faith. On appeal, the defendants claim that the Bankruptcy Court lacked jurisdiction to sanction them and that it relied on clearly erroneous factual findings. Neither claim holds water.

### A.     Standard of Review

The Bankruptcy Court awarded sanctions under Federal Rule of Civil Procedure 16(f). *Appeal*, R. 1-3 at 6–7; *see also* Fed. R. Bankr. P. 7016 ("Rule 16 F. R. Civ. P. applies in adversary proceedings."). The Court reviews that decision for an abuse of discretion. *See Clarksville-Montgomery Cnty. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 998 (6th Cir. 1991) (reviewing district court's Rule 16(f) sanctions order for an abuse of discretion); *see also In re Wingerter*, 594 F.3d 931, 936 (6th Cir. 2010) (reviewing sanctions under Fed. R. Bankr. P. 9011(b) for an abuse of discretion). Under that standard, the Bankruptcy Court's order stands unless it relied on clearly erroneous factual findings, misapplied the law, or used an erroneous legal standard. *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007) (citation omitted).

### B.     The Bankruptcy Court's Jurisdiction to Order Sanctions

After the plaintiffs moved for sanctions, but before the Bankruptcy Court granted their motion, the Bankruptcy Court dismissed the plaintiffs' complaint for lack of subject-matter jurisdiction. *Adversary Proceeding*, R. 610.[3] The defendants initially argue that, because the Bankruptcy Court did not have subject-matter jurisdiction over the plaintiffs'

---

[3] This Court previously affirmed the Bankruptcy Court's decision on the motion to dismiss. *See Spradlin*, 2012 WL 6706188.

5

complaint, it also lacked jurisdiction to impose sanctions on the defendants. *Appeal*, R. 12 at 13–14. This argument confuses a court's subject-matter jurisdiction with its ancillary jurisdiction. Only the latter is necessary to sanction a party, and Rule 7016 of the Bankruptcy Rules granted the Bankruptcy Court such jurisdiction here.

The Bankruptcy Court did not exercise its subject-matter jurisdiction in ordering sanctions against the defendants. Subject-matter jurisdiction grants a court power to adjudicate a plaintiff's claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (explaining that subject-matter jurisdiction concerns "the courts' statutory or constitutional *power* to adjudicate the case"). So a court that lacks subject-matter jurisdiction cannot pass judgment on the merits of a claim. *See id.* at 94–95. But the Bankruptcy Court's order said nothing about the merits of the plaintiffs' claim. *See Appeal*, R. 1-3. It merely condemned the conduct of the defendants in the settlement proceedings. *See id.* at 6–8.

The Bankruptcy Court's power to sanction the defendants rested on its ancillary jurisdiction. A court exercises this jurisdiction to, among others things, "manage its proceedings." *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003) (quoting *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)). Ancillary jurisdiction thus allows courts to ensure that parties comply with the procedural rules that keep a case proceeding in an orderly fashion: meeting deadlines, honoring pages limits, obeying formatting rules, following basic rules of decorum, and so on. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994) (collecting examples); *cf. In re Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984) (en banc) (holding that sanctions under Rule 16 are critical to a court's "management of its docket and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both").

Such matters are "collateral issues," ancillary to the merits of the claim. *Willy v. Coastal Corp.*, 503 U.S. 131, 137–38 (1992) (quotation omitted). Since they do not involve the claim's merits, resolving them does not depend on the existence of subject-matter jurisdiction. Thus, in *Willy v. Coastal Corp.*, the Supreme Court held that a district court could impose Rule 11 sanctions on a party even though it was later determined that the district court lacked subject-matter jurisdiction over the plaintiff's claim. *Id.* at 139; *see also River City Capital, L.P. v. Bd. of Cnty. Comm'rs*, 491 F.3d 301, 310 (6th Cir. 2007) (applying *Willy* to reach the same result with Rule 37 sanctions).

The Bankruptcy Court's sanctions order was no different than the sanctions upheld in *Willy* and *River City Capital*. The order was issued under a rule passed by Congress, and it did not address the merits of the plaintiffs' claims. Thus, the Bankruptcy Court had jurisdiction to impose sanctions.

   C. **The Bankruptcy Court's Decision to Sanction the Defendants**

The only remaining issue the defendants raise regarding the sanctions order is whether the Bankruptcy Court relied on clearly erroneous factual findings. The defendants do not challenge other aspects of the Bankruptcy Court's order. They do not question the amount of sanctions that the Bankruptcy Court awarded, just the initial decision to impose sanctions on the defendants. Their brief does not claim that the sanctions were excessive, *see Appeal*, R. 12 at 14−17, and the defendants' counsel confirmed at oral argument that their sole challenge is to the imposition of sanctions generally. The defendants also do not claim that the Bankruptcy Court erred as a matter of law—other than raising the already-discussed

jurisdictional issue. *See Appeal*, R. 12 at 13–14.[4]  Thus, the Court's review is limited to the question of whether the Bankruptcy Court's sanction order rested on clearly erroneous factual findings.

***The Mediation and the Sanction Order:***   August 10, 2011, was supposed to be the culmination of a six-month mediation process.  *See Appeal*, R. 1-3 at 2; *Adversary Proceeding*, R. 549 at 1 ¶ 1.  The Bankruptcy Court ordered the parties to make a good-faith attempt at mediation.  *See Appeal*, R. 1-3 at 2.  To that end, the court appointed C. Cleveland Gambill, a mediator with more than twenty years of experience, to oversee the proceedings.  *See id.* at 2–3.  After a period of discovery and initial discussions, Gambill ordered both parties to send a representative with full settlement authority to the mediation conference in Lexington on August 10, 2011, at 9:00 a.m.  *See Adversary Proceeding*, R. 547 at 1–2 ¶¶ 1, 2.  The defendants' representative, Gary Richard, arrived three hours late because of issues with his flight.  *Adversary Proceeding*, R. 549 at 2 ¶ 4–5; *Appeal*, R. 1-3 at 3.  While they waited for Richard to arrive, the defendants' attorney, Richard Getty, began general discussions with the plaintiffs.  *See Adversary Proceeding*, R. 562-1 at 7 ¶ 16.  The plaintiffs made it clear to Getty that they would not accept any settlement that did not include the defendants paying them money.  *See id.* ¶ 17.

When Richard did finally arrive, he did not join the discussion Getty had started. Instead, Richard requested several hours to speak with his attorneys, as well as additional

---

[4] Defense counsel confirmed at oral argument that the jurisdictional issue was the only error of law that the defendants claimed.  Counsel also agreed that they were challenging the Bankruptcy Court's findings of fact.  The defendants' citation to *A.T. Reynolds & Sons* might be construed as a challenge based on a question of law.  *See Appeal*, R. 12 at 15–17 (citing *In re A.T. Reynolds & Sons, Inc.*, 452 B.R. 374 (S.D.N.Y. 2011)).  However, as defendants' appellate counsel conceded at oral argument, the facts of this case make *A.T. Reynolds & Sons* inapposite.

time to "make some calls." *Adversary Proceeding*, R. 549 at 2–3 ¶ 5. Richard also demanded a one-on-one meeting with Warren Halle, which defied the established structure for the mediation conference. *Id.* at 3 ¶ 6; *see also* R. 1-3 at 4 (explaining that, since the plaintiffs had sent Stephen Fleischman as their representative, Richard's demand defied the established mediation structure). Needless to say, the parties did not reach a settlement. *Appeal*, R. 1-3 at 6. In fact, the defendants filed a state-court suit against the plaintiffs the day after the mediation conference—before Gambill formally ended the mediation proceedings. *Id.*

Gambill filed a report with the Bankruptcy Court on August 19, 2011. *Appeal*, R. 1-3 at 2. He detailed the defendants' failure to prepare for, and proceed with, the ordered mediation. *See Adversary Proceeding*, R. 549. His report roundly condemned their behavior:

> It is apparent . . . that Defendants Mr. Gary J. Richard, Pikeville Energy, LLC and Banner Industries of N.E., Inc., have not and will not engage in any meaningful negotiation process in this matter. It is also the belief of the [Mediator] that these parties have demonstrated bad faith and disrespect for the mediation process ordered by the Court. Further, in the opinion of the [Mediator], such bad faith and disrespect have been harmful to other parties and participants, have unduly delayed an orderly resolution of the case, and are deserving of sanctions by the Court. In fact, it is the opinion of the [Mediator] that the bad faith and disrespect displayed in this matter are the worst he has experienced in his twenty years of mediation experience.

*Id.* at 3–4 ¶ 8. Conversely, Gambill praised the plaintiffs' preparation and cooperation as "exemplary." *Id.* at 3 ¶ 7. He ultimately concluded that mediation was not possible because the defendants would not "engage in any meaningful negotiation" and returned the matter to the Bankruptcy Court. *Id.* at ¶ 8.

9

The Bankruptcy Court relied on Gambill's findings, along with its own experience with the defendants, in concluding that sanctions against the defendants were warranted. *Appeal*, R. 1-3 at 7. It sanctioned the defendants on two general grounds: (1) they "were unprepared" for the mediation conference, and (2) they "failed to participate in good faith in the mediation process as required by the Mediation Order and Rule 16." *Id.* The court made it clear that Richard's tardiness was not a significant factor in its decision to impose sanctions.[5] Indeed, under Rule 16 the Bankruptcy Court could sanction the parties on either of the two primary grounds it identified. *See* Fed. R. Civ. P. 16(f)(1)(B), (2) (empowering courts to issue sanctions, including the opposing party's attorney fees, when a party or its attorney is "substantially unprepared to participate--or does not participate in good faith"); *see also Pinero v. Corp. Courts At Miami Lakes, Inc.*, 389 F. App'x 886, 889 (11th Cir. 2010) (upholding monetary sanction for failure to comply with requirements for a settlement conference). The Court assesses the defendants' challenge to each ground separately.

***Failure to Prepare:*** The Bankruptcy Court concluded that the defendants had not prepared for the mediation because: (1) the night before the mediation, the defendants' attorney told Gambill that the defendants needed to meet before the mediation and would be late; and (2) Richard insisted on spending several hours with his attorneys before joining the mediation. *Appeal*, R. 1-3 at 5. The Bankruptcy Court reasoned that, if the defendants and their attorneys had properly prepared for the meeting, they would not have needed either delay. *See id.*

---

[5] *See Appeal*, R. 1-3 at 5 ("If merely arriving late was the only basis for the Motion for Sanctions, the Court would be inclined to agree with the Pikeville Defendants that no sanctions are warranted. However, arriving late was only one of Richard's actions that caused the mediation to fall apart.").

The defendants do not seriously challenge this first ground for the Bankruptcy Court's sanctions order. They explain actions they took in earlier steps in the mediation process, but do not identify any actions they took to prepare for the mediation conference itself. *See Appeal*, R. 12 at 3–19 (focusing on the Bankruptcy Court's finding of bad faith at the mediation conference without squarely addressing its finding that the defendants had not prepared). Their reply brief does assert in passing that the plaintiffs' position at the mediation conference was an "unanticipated proposal." *Appeal*, R. 21 at 11.[6] But the defendants do not cite any evidence in the record for this assertion. *See* Fed. R. Bankr. P. 8010(a)(1)(E) (requiring appellate arguments to make specific citations to the record); *see also In re Tevis*, 347 B.R. 679, 689 (B.A.P. 9th Cir. 2006) (nothing that a claim that the bankruptcy court abused its discretion must be supported with citations to evidence in the record). What's more, their own evidence contradicts their assertion. Getty's affidavit states that it was clear "from the outset" of the mediation process—months before the conference— that the plaintiffs wanted to force the defendants "to capitulate in the pending litigation." *Adversary Proceeding*, 562-1 at 3 ¶ 8. And other portions of the record confirm that the defendants' knew, or at least should have known, the plaintiffs' position heading into the conference. *See Adversary Proceeding*, R. 549 at 3 ¶ 7 (explaining that the plaintiffs had disclosed a major portion of their "comprehensive Mediation Statement" with the defendants

---

[6] The defendants' claim in their reply brief could be construed as part of their opening brief's claim that the mediator's insistence on a monetary settlement was a surprise because he appeared to be "positioning the parties for a mutual 'walk away'" in the process. *Appeal*, R. 12 at 8; *see also id.* at 10 (saying that Richard needed time to confer after hearing Halle's "hard line approach"). However, the defendants' initial brief does not expressly state that the plaintiffs' position was a surprise. So the reply brief's claim of surprise is arguably waived. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 331–32 (6th Cir. 2008); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Given that the evidence in the record clearly resolves the argument in the plaintiffs' favor while deeming the argument waived would rely on parsing the ambiguities of the defendants' briefs, the Court will address the merits of the argument.

before the mediation); *see also* R. 12 at 12–13 (bolding the excerpt in an email from Fleischman that makes it clear that the plaintiffs' goal was to receive "a large check" from the defendants and concluding that the defendants were "always seeking a monetary payment"). What's more, the defendants never contest that Getty's admission to Gambill that he and his clients would be late to the meeting demonstrated that they had not prepared adequately for the mediation. *See Appeal*, R. 1-3 at 5 (citing Getty's statement to Gambill on the evening of August 9). Indeed, the defendants never identify any steps they took in the days or weeks before the mediation conference to prepare for the meeting. *See Appeal*, R. 12 at 3–19.

The defendants therefore have not shown that the Bankruptcy Court's finding that they failed to prepare for the mediation conference was clearly erroneous. And since failing to prepare is a sufficient basis to award sanctions under Rule 16(f)(1)(B), *see Francis v. Women's Obstetrics & Gynecology Grp, P.C.*, 144 F.R.D. 646, 649 (W.D.N.Y. 1992), that finding is sufficient for the Court to affirm the Bankruptcy Court's sanctions order.

*Failure to Participate in Good Faith:* The Bankruptcy Court determined that the defendants had not mediated in good faith based on: (1) the fact that Richard did not appear to have the full settlement authority required for the mediation; (2) Richard's demand for a one-on-one meeting with Halle, which undermined the established structure for the mediation; (3) the defendants' decision to circulate a draft of their state-court complaint prior to a mediation meeting, which only exacerbated tensions between the parties; and (4) the defendants' decision to file their state-court complaint before the mediator formally ended the mediation process. *See Appeal*, R. 1-3 at 5−6. The Bankruptcy Court put particular

12

emphasis on the filing of the state-court suit, which it found "clearly indicates that they had no intention of engaging in good faith in the mediation session." *Id.* at 6.

Despite the fact that it was the primary reason for the Bankruptcy's Court bad-faith finding, the defendants never contest that their decision to file their state-court suit demonstrated bad faith. *See Appeal*, R. 12 (defending the defendants' decision to circulate the state-court complaint, but never justifying their decision to file it before the mediation formally ended). That unchallenged evidence supports an inference that the defendants did not mediate in good faith. If they were committed to following the Bankruptcy Court's order to mediate in good faith, the defendants would have honored the ceasefire created by the mediation. *See Appeal*, R. 1-3 at 6; *see also Adversary Proceeding*, R. 527 at 4 ¶ 20 (suspending the adversary proceeding "[t]o facilitate mediation"). Instead, they filed their state-court suit, opening up a new litigious front in the war between the parties and dashing any hope of settlement through the mediation process. *See Appeal*, R. 1-3 at 6. While the defendants might have had innocent reasons for filing their state-court suit, they did not offer any explanation for filing their suit when they did—not to the Bankruptcy Court, *see Adversary Proceeding*, R. 562, or this Court, *see Appeal*, R. 12. In light of the defendants' failure to challenge the Bankruptcy Court's primary basis for finding that they acted in bad faith, the Court cannot say that finding was clearly erroneous.

That conclusion is fortified by two other findings the Bankruptcy Court made in determining that the defendants acted in bad faith. The defendants undermined the proceedings by circulating a draft of their state-court complaint. *Appeal*, R. 1-3 at 5–6.

They also failed to send Richard to the settlement conference with full settlement authority. *Id.* at 5. The defendants do not successfully question either finding.

First, the Bankruptcy Court did not err in concluding that the defendants demonstrated bad faith by circulating a draft of their state-court complaint during the mediation process. *Id.* at 6. The defendants challenge that finding, but do not address the Bankruptcy Court's reasoning. They assert that, contrary to the Bankruptcy Court's finding, their decision was not meant to sabotage the mediation process. *Appeal*, R. 12 at 11−13. They insist—as they did when arguing the sanctions motion before the Bankruptcy Court—that they were only showing the plaintiffs that there were other claims to consider in the mediation process. *Id.* at 11. The Bankruptcy Court rejected that excuse, pointing out that the plaintiffs "were already aware" of those unfiled claims and the defendants "were well aware that their actions would do nothing but strain an already contentious relationship." *Appeal*, R. 1-3 at 6. The defendants do not rebut the Bankruptcy Court's reasoning. Instead, they simply reiterate the argument they made to the Bankruptcy Court. *See Appeal*, R. 12 at 11−13. Repeating the same argument that the Bankruptcy Court exposed as flawed, without addressing those flaws, does not refute the Bankruptcy Court's finding. Consequently, the defendants' attempted justification of their decision to circulate their drafted state-court complaint does not demonstrate that the Bankruptcy Court's bad-faith finding was clearly erroneous.

Second, the Bankruptcy Court did not err in finding that the defendants failed to send a representative with full settlement authority to the mediation conference. The Bankruptcy Court based its finding on the fact that Richard asked to make phone calls to his associates

14

and confer with his lawyers, rather than engage in settlement negotiations. *See Appeal*, R. 1-3 at 5, 7. The defendants challenge that finding by claiming that Gambill used "strong arm tactics" to try and force them to pay money to the plaintiffs in a settlement, and that Richard merely exercised the defendants' prerogative to not settle. *Appeal*, R. 12 at 15–16 (citing *In re A.T. Reynolds & Sons, Inc.*, 452 B.R. 374 (S.D.N.Y. 2011)). However, at oral argument they conceded that there was no evidence in the record that Gambill used any such tactics. Similarly, the defendants' brief fails to cite any evidence in the record establishing that Richard's request for a delay was an exercise of his prerogative not to settle or somehow motivated by a belief in the "supremacy of [his] legal position." *Id.* at 16 (quoting *In re A.T. Reynolds & Sons*, 452 B.R. at 382); *see also Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005) (basing clear error review on factual evidence in the record). Instead, all of the facts in the record suggest that Richard did not have the authority to negotiate on the defendants' behalf. If Richard had full settlement authority and believed in the supremacy of his legal position, he would have acted very differently. His response would have been to make a counter offer from his position of strength, or at least flatly refuse the plaintiffs' terms as soon as they were offered. Instead, he asked to make phone calls to his associates and spend several hours with his attorneys. *See Appeal*, R. 1-3 at 5. The most reasonable inference from his actions is that he was not authorized to decide how to respond to the plaintiffs' offer.[7]

The defendants also assert that the Bankruptcy Court "applied 'an unworkable and overly stringent standard for determining "settlement authority" and accordingly abused its

---

[7] The second most reasonable inference, that he was using delay tactics, would still support a finding of bad faith.

15

discretion.'" *Appeal*, R. 12 at 16 (quoting *In re A.T. Reynolds & Sons*, 452 B.R. at 384). But the "settlement authority" the court condemned in *A.T. Reynolds & Sons* was nothing like the "settlement authority" here. The mediator in that case dramatically expanded the concept of settlement authority by placing three very demanding and unusual conditions on the parties' representatives. *See In re A.T. Reynolds & Sons*, 452 B.R. at 384 (condemning the mediator's requirement that the party's representatives at mediation have "the ability to (1) settle this case for *any* amount, including an amount greater than the amount in controversy; (2) discuss *any* theory of legal liability; and (3) enter into undefined 'creative solutions'"). Gambill did not place any such conditions on the parties' representatives at the mediation conference. *See Adversary Proceeding*, R. 527 at 3 ¶ 8 (stating only that each representative should have "full settlement authority"); *Appeal*, R. 1-3 at 5 (finding that Richard's need to consult others on the issue of whether they could pay the plaintiffs *at all* showed he did not have "full authority to settle"). Thus, the defendants' criticisms of (1) Gambill's mediation tactics and (2) the Bankruptcy Court's approval of his mediation do not actually apply.

The defendants' remaining argument is that the Bankruptcy Court erred in relying on Gambill's report, which they claim unfairly blamed them for the breakdown of the mediation conference. *See Appeal*, R. 12 at 8–11. They buttress their argument by pointing to efforts they made earlier in the mediation process and claiming that various actions by the plaintiffs also harmed the mediation process. *Id.* at 3–11. However, the only evidence the defendants offer to counter Gambill's report is an affidavit from their own attorney, David Getty. *See Appeal*, R. 12 at 8–11. Gambill clearly did not share the defendants' view of the proceeding. In fact, Gambill's view was the exact opposite. He condemned the defendants' behavior as

16

"the worst" he had seen in twenty years of mediating while lauding the plaintiffs' conduct as "exemplary." *Adversary Proceeding*, R. 549 at 3–4 ¶¶ 7–8. At best, the defendants' argument ends in a stalemate—their attorney's word against the mediator's. The Bankruptcy Court credited the account in the mediator's report based on its review of the adversary proceeding record and its "knowledge of and experience with Mr. Gambill." *Appeal*, R. 1-3 at 7. This Court, looking at a cold record, cannot say that decision was clearly erroneous. Similarly, the defendants' attempt to highlight condemnable behavior by the plaintiffs does not provide any reason to overturn the Bankruptcy Court's order. At most, this line of argument establishes that the plaintiffs deserved sanctions as well. It says nothing about the issue here: whether the defendants failed to participate in good faith at the mediation conference.

The Bankruptcy Court's decision to sanction the defendants was based on direct evidence in the record and reasonable inferences it drew from the facts in the record. The defendants have not established that those findings were clearly erroneous, so the sanctions order was within the Bankruptcy Court's discretion. Thus, this Court must affirm the sanctions order.

## CONCLUSION

Accordingly, for the reasons given above and those stated on the record, it is **ORDERED** that:

(1) The defendants' motion for leave to amend their original appeal brief, R. 22, is **GRANTED**. The Clerk **SHALL DOCKET** the defendants' tendered amended brief, R. 22-3.

17

(2) The Bankruptcy Court's Order Granting Motion for Sanctions, *Spradlin v. Pikeville Energy Group, LLC* (*In re Alma Energy, LLC*), No. 7:09-ap-07005-jl (Bankr. E.D. Ky. Sep. 21, 2012), R. 649, is **AFFIRMED**.

This the 12th day of April, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge